IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIA LUNA, | CV F 08 - 1962 AWI SMS |
| Plaintiff, | ORDER ON PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES, EXPENSES AND COSTS |
| v. | |
| HOA TRUNG VO dba SAVE MORE 98 DISCOUNT STORE; BLIATOUT LLC; and DOES 1-10 inclusive, | Doc. # 54 |
| Defendants. | |

In this action for damages and injunctive relief, the court entered judgment in favor of plaintiff Antonia Luna ("Plaintiff") and awarded statutory damages pursuant to a stipulated order of judgment that was filed on January 4, 2011. In the instant motion, Plaintiff requests award of attorney's fees, expenses and costs pursuant to 42 U.S.C. § 12205. Defendants do not dispute the entitlement of Plaintiff to attorney's fees, costs and expenses in general but do dispute the hourly rates asserted by Plaintiff for computation of fees. Defendants also dispute the reasonability and necessity of work time claimed by Plaintiff for certain services.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The complaint in this action was filed pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA") on December 23, 2008. The complaint alleged that Plaintiff, a quadriplegic who relies on a motorized wheelchair for mobility, encountered conditions in the parking lot of the Asian Village Shopping Center in Fresno, and in the Save More 98 Discount Store located in the shopping center, that constituted violations of

accessibility standards required by the ADA.  On August 21, 2009, Defendant Blaitout, LLC filed a statement of settlement conference in which they indicated that a survey had been made of the parking lot and premises in question to identify non-ADA compliant features and to identify suggested fixes.  The settlement conference statement indicated that further settlement negotiations would be required to reach an agreed upon list of remedial changes.

On August 27, 2010, the parties entered into a consent decree and order wherein Defendants did not admit "liability" but entered into the Decree and Order "for the purpose of resolving this lawsuit without the need for protracted litigation and without the admission of any liability."  Doc. # 24 at 2:17-19.  In the Consent Decree and Order, the parties agreed that the terms of the Decree represented "full, complete and final disposition and settlement of Plaintiff's claims against Defendants for *injunctive* relief that have arisen out of the subject Complaint."  Doc. # 25 at 2:11-13 (italics added).  The Consent Decree and Order provided a description of the items of work to be accomplished and the time within which the work that would bring the subject property into compliance with the ADA would be completed.  The Decree and Order specifically provided that the Decree "does not resolve Plaintiff's claims for damages, attorney fees, litigation expenses and costs. . . ."  Doc. # 24 at 5:14-15.

On October 8, 2010, Plaintiff filed a motion for summary judgment as to all claims. Defendant Blaitout filed a response on October 28, 2010.  The response was a three-page document that was essentially a statement of non-opposition.  Defendant Hoa Trung Vo submitted a very similar response the following day.  Plaintiff filed a reply brief on November 2010.  On November 17, 2010, the court denied Plaintiff's motion for summary judgment without prejudice.  The primary reason for the court's denial was that Plaintiff's motion for summary judgment failed to set forth each of the facts relied upon in support of the motion in "a statement of undisputed facts" in violation of Local Rule 260(a).  The court also noted that although the motion was dismissed without prejudice, the fact that there appeared to be no factual or legal dispute indicated to the court that resolution of the action should be achievable

by the more efficient and less expensive expedient of stipulated judgment.  The court also opined that, to the extent Defendants had asked the court to impose damages less than the statutory amount, the court could find no legal basis for a downward departure from the statutory amount of $4,000.00 per violation.

The parties filed a stipulation and proposed order of judgment on January 3, 2011.  The stipulated order of judgment was filed the following day.  The instant motion for attorney fees was filed on April 4, 2011.  Defendant Blaitout, LLC filed objections to Plaintiff's motion for attorney's fees on April 18, 2011, and Plaintiff filed a reply on April 26, 2011.  On April 26, 2011, Defendant Vo filed a document that the court construes to be a notice of non-opposition to Defendant Blaitout's opposition to Plaintiff's motion for attorney's fees.  Plaintiff filed a motion to strike Defendant Vo's pleading on April 27, 2011.  The motion for attorney's fees was taken under submission as of May 9, 2011.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 12205, a prevailing party, other than the United States, is entitled to "a reasonable attorney's fee, including litigation expenses and costs."  As noted above, neither party disputes that Plaintiff is a "prevailing party" within the meaning of section 12205.  An award of reasonable attorney's fees is determined through the hybrid lodestar multiplier approach.  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000); McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999); cf. Ketchum v. Moses, 24 Cal.4th 1122, 1133-36 (2001) (discussing the lodestar approach in California).  The Ninth Circuit has explained the hybrid lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First, a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  See D'Emanuelle [v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990)]; Hensley [v. Eckerhart, 461 U.S. 424,] 461 (1983). The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  See Hensley, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary."  Id. at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the

3

initial calculation of the lodestar.  See Blum v. Stenson, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); Hensley, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum, 465 U.S. at 898-901); Blum, 465 U.S. at 897; D'Emanuele, 904 F.2d at 1384, 1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1989).

Van Gerwen, 214 F.3d at 1045; cf. Ketchum, 24 Cal.4th at 1132-39 (discussing lodestar and multipliers in California).

      The fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Blum, 465 U.S. at 896 n.11; Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005); Schwarz v. Secretary of Health and Human Servs., 73 F.3d 895, 908 (9th Cir. 1995).  The Ninth Circuit has elaborated that:

> Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." [Chalmers v. City of Los Angeles, 796 F.2d 796 F.2d1205, 1210.]   This determination "is not made by reference to rates actually charged by the prevailing party." Id.  The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." Id. at 1210-11. Either current or historical rates prevailing rates may be used. Missouri v. Jenkins, 491 U.S. 271 (1984).  The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." [Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987).]

D'Emanuelle v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1384 (9th Cir. 1990); cf. Ketchum, 24 Cal.4th at 1139 ("Indeed, the 'reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.'").  The "relevant legal community" in the lodestar calculation is

4

generally the forum in which the district court sits.[1]  Mendenhall v. NTSB, 213 F.3d 464, 471 (9th Cir. 2000); Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997); Schwarz, 73 F.3d at 906; Deukmejian, 987 F.2d at 1405; Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991); cf. Childrens Hospital and Medical Center v. Belshe, 97 Cal. App. 4th 740, 782-783 (2002) (upholding rate in a case tried in San Francisco after trial court reviewed rates of attorneys in the San Francisco Bay area); A & S Air Conditioning v. John J. Moore Co., 184 Cal.App.2d 617, 621 (1960) ("The determination of reasonable attorneys' fees is controlled by the amounts customarily charged in the locale of the action, here Alameda County.").

## DISCUSSION

Plaintiff is represented by attorneys from the Law Offices of Paul L. Rein, located in Oakland, California.  Representation involved a total of five personnel; three attorneys and two paralegals, who billed a total of 351.4 hours at a total cost of $138,761 in attorney's fees and an additional $19,284 in litigation expenses and costs.  Defendants dispute the hourly rate billed by the three attorneys from the Rein law firm.  Defendants also contend that two major activities for which Plaintiff's attorneys submitted claims – the motion for summary judgment and the deposition of Defendant Hoa Trung Vo and Bobby T. Vang, a representative of Blaitout, LLC – were unnecessary and therefore subject to exclusion.  Defendant Blaitout also contends that certain billed costs are attributable to Defendant Vo and should be apportioned accordingly.  Finally, Defendants seek a discount as to the amount billed for preparation of Plaintiff's motion for attorney's fees.  The court will consider each of Defendants' objections in turn.

**I. Billing Rates**

Plaintiff requests that the legal staff representing her be compensated for time spent at

---

[1] There are narrow exceptions to the general rule that the relevant legal community is the forum in which the court sits.  See Schwarz, 73 F.3d at 907; cf. Horsford v. Board of Trustee of California State Univ., 132 Cal.App.4th 359, 396-97 (2005) (finding court abused discretion in not considering "out of town" San Francisco rates where plaintiff was unable to obtain local counsel).  Plaintiff, however, does not argue that a recognized exception to the general rule applies.

5

the following hourly rates:

| | | |
|---|---|---|
| (1) | Paul L. Rein, lead attorney, | $495.00 |
| (2) | Celia McGuinness, senior associate | $395.00 |
| (3) | Catherine Cabalo, associate | $330.00 |
| (4) | Aaron Clefton, senior paralegal | $165.00 |
| (5) | Katherine Castro, paralegal | $100.00 |

### A. Paul L. Rein

Paul L. Rein ("Rein") is the lead attorney in this action. He has more than 40 years of experience as an attorney and has specialized in disability-related litigation. Plaintiff submits a number of case examples to substantiate Rein's assertion that $495 per hour has been held a reasonable rate by reviewing courts in fairly recent disability rights cases. It is significant that each of the case examples listed come from courts in the Northern District. The court has also reviewed the declarations submitted by Mr. Rein from attorneys Sid Wolinski, John Burris and Christopher Welan. With the exception of Mr. Welan, all of the declarations of attorneys practicing in the area of disability law attest to billing rates that are prevalent in the San Francisco bay area or in similar major metropolitan areas. Mr. Welan's declaration attests to rates he has billed in the Sacramento area and in Contra Costa County.

As noted above, the relevant forum for purposes of compensation is the forum in which the district court sits; in this case the Eastern District of California and specifically the southern division of that District. Mendenhall, 213 F.3d at 471. As this court has previously held, case comparisons and evidentiary support citing prevailing hourly rates in the Northern District, Central District, Southern District and anywhere else outside the Eastern District - Fresno Division is irrelevant to the determination of prevailing rates. See Beauford v. E.W.H. Group, Inc., 2009 WL 3162249 (E.D. Cal. 2009). As noted, Plaintiff has provided a number of affidavits and case examples that support Rein's request for an hourly rate of $495 per hour, but none of the cases or declarations provide any evidence of prevailing rated in the forum

covered by the Fresno Division of the Eastern District. Plaintiff asserts, without authority, that he would be able to bill $495 per hour in the Fresno community as well.

Defendants cite a number of cases, most from this court, that establish maximum rates for very experienced attorneys practicing in the Fresno area are in the neighborhood of $300 to $350 per hour. The billing range urged by Defendants corresponds to what this court has been able to determine in its own research. In Jones v. McGill, 2009 WL 1862457 (E.D. Cal. 2009), a fully contested civil rights case, the attorney for the prevailing party requested attorney fees at the rate of $425 per hour. As in this case, the requesting attorney provided affidavits concerning prevailing rates in the San Francisco Bay Area, but failed to provide any proof of prevailing rates in the Fresno area. Id. at *2. After consideration of the information available the court found that $350 per hour was the prevailing rate charged by attorneys with 20+ years of experience and established reputations within the Fresno Area. Id. at *3. In Beauford v. E.W.H. Group, Inc., 2009 WL3162249 (E.D. Cal. 2009)[2], this court addressed fees requested by the plaintiff's attorney who successfully moved for remand after the class action case was improperly removed from state court. The prevailing attorney requested an hourly rate of $425 per hour which he supported by case examples both from within and without the Fresno practice area. Id. at *4. This court held all case examples from outside the Fresno practice area were irrelevant to the determination of prevailing hourly rates and found that the evidence submitted supported an hourly rate of $350 per hour. Id. at *5.

The most recent case from this court giving extensive consideration to the issue of prevailing rates for purposes of computing attorney's fees is Jadwin v. County of Kern, 2011 WL 240695 (E.D. Cal. 2011). In Jadwin, the court considered requests for fees at the rates of $660 per hour for a consulting attorney with 30+ years of experience, $450 per hour for co-counsel with 14 years of experience and $400 per hour for a lead counsel with relatively little

---

[2] While the adjustment of historical rate data for inflation is appropriate, Jordan, 815 F.2d at 1262, Plaintiff has not provided any information to indicate that inflation has had much of an influence on rates since 2008, nor is the court subjectively aware of any significant increase in prevailing rates in the past few years.

experience. As with other cases noted, the court rejected evidence pertaining to compensation rates outside the Fresno area and, in addition, rejected the requesting attorney's arguments for application of out-of-town rates. Id. at *43 - *46. After making a fairly extensive review of recent cases from this district, the court reduced that hourly rates requested to $380 per hour for the consulting attorney, $350 per hour for co-counsel, and $275 per hour for lead counsel. Id. at *51.

Although Plaintiff contends that Defendants have failed to show that the rates requested by Plaintiff's attorneys are inappropriate, the court finds that Plaintiff has failed to meet her burden to provide evidence in the form of declarations or case authority to show that the rates requested are prevailing rates for the Fresno area. Plaintiff has also failed to provide any evidence that out-of-area rates should apply.

"In this circuit, the reasonable hourly rate 'is not made by reference to rates actually charged by the prevailing party,' an attorney's undergraduate institution or by the number of years spent as a practicing lawyer. [citations.] Rather, a reasonable hourly rate is determined by 'experience, skill and reputation." Jadwin, 2011 WL 240695 at *47 (quoting Welch v. Metro Life Ins. Co., 480 F.3d 942, 946 (9 Cir. 2007). "The most reliable factor in determining a reasonable hourly rate is the ability and skill demonstrated by counsel." Id. at *48. There is no question that Mr. Rein is an attorney of more than 40 years of experience and that he has a reputation of competence in the field of disability law. By the same token, there is no indication that Mr. Rein's expertise, experience or reputation is significantly greater than or less than his position would otherwise indicate; that is, Mr. Rein appears to fall within the expected range of experience, skill and reputation that one would expect to find within the cohort of experienced lead attorneys who would be expected to command the highest rates applicable for this community. There is nothing that has come before the court during the course of this action that would indicate any talent or capability beyond what would be expected in an attorney of Mr. Rein's years of experience. Nor is there anything about this

8

case to suggest that Mr. Rein or other members of his law firm experienced legal or factual issues that were out of the ordinary.

The court can find no basis to extend the rate of compensation for Mr. Rein beyond what the court has identified as the top of the compensation range for attorneys practicing in the Fresno area – $375 per hour for a senior lead attorney. The court finds this rate is commensurate with the prevailing rates in the Fresno area for attorneys of similar experience, expertise and reputation. Plaintiff does not request that any factor be applied to the prevailing rate in this case. In any event, the court cannot find anything about this case that would tend to indicate that the prevailing hourly rate that has been determined by this court would be unjust if applied in this case. Mr. Rein's compensation will be calculated at an hourly rate of $375 per hour.

### B.  *Attorneys Catherine Cabalo and Celia McGuinness*

Of the two associate attorneys Celia McGuinness is the more senior, having twenty years of litigation experience as opposed to ten years of experience for Catherine Cabalo. Both associate attorneys appear to have exemplary educational credentials. Celia McGuinness apparently has specialized in disability law for the last two or three years. There is no representation that Catherine Cabalo has similarly specialized. Plaintiff's argument with regard to reasonable pay rates centers primarily on Mr. Rein and, in any event, contains no comparisons for attorney rates at any level of expertise that pertain to the Fresno area market. The request by Ms. McGuinness for a compensation rate of $395 per hour is supported by the declaration of Brian Gearinger which, like the other declarations filed in support of hourly rate claims by Plaintiffs generally, focuses on prevailing rates in the Northern District and, in particular, in the San Francisco area.

The court has found it necessary to reduce the rate requested by Mr. Rein by approximately 26%. While the rates requested by associates Cabalo and McGuinness are not above the prevailing rates to the same extent as those requested by Mr. Rein, it is nonetheless

clear that the Fresno area market would not support the rates requested. The case examples cited above support hourly rates from about $200 per hour to about $350 per hour depending on experience and responsibility. See Jones, 2009 WL 1862457 at *3. Given the levels of experience and responsibility in this case of the two associates, the court finds that a rate of $315 per hour for associate McGuinness and $295 per hour for associate Cabalo are appropriate and within the range of prevailing rates for this community.

Defendants do not contest the claimed rates for paralegal employees of the law firm and data on rates for paralegals appears less abundant. The court will use the hourly rates for the two paralegals that was requested by Plaintiff; $165 per hour for Aaron Clefton, Sr. and $100 per hour for Katherine Castro.

**II. Reasonable Hours**

Defendants challenge the hours claimed by Plaintiff with regard to three major segments of this action. First, Defendants challenge the reasonableness of the hours and fees associated with Plaintiff's preparation of their motion for summary judgment. Defendants contend that the motion was unnecessary and unnecessarily verbose. Second, Defendants challenge the reasonableness of the hours and fees associated with the depositions of individual Defendant Hoa Trung Vo and Bobby T. Vang, representative of Defendant Bliatout, LLC. Defendants contend that neither deposition was necessary because the consent decree stipulated the extent of injunctive relief that would be available to Plaintiff and liability had already been admitted. Third, Defendants dispute the reasonableness of the hours and fees associated with Plaintiff's motion for attorney's fees. The court will consider each in turn.

   *A. Plaintiff's Motion for Summary Judgment*

Plaintiff filed her motion for summary judgment on October 8, 2010. Plaintiff contends that the motion was necessary because Defendants had not "admitted liability" up to that point and because Defendants had insisted on a "global settlement" approach in which

10

they consistently offered a sum insufficient to cover both Plaintiff's statutory damages and the amount of costs and fees that had been incurred by Plaintiff up to the point of the offer. Plaintiff contends that Defendants did not "admit liability" until after the motion for summary judgment had been filed and served.  Defendants, on the other hand contend that "[a]s a practical matter, [D]efendants' liability had been established by the consent decree under which [D]efendants performed remedial work in compliance with the ADA."  Doc. # 63 at 9:23-25.

Plaintiff's motion for summary judgment was submitted on the deadline date established by the Scheduling Conference Order filed February 5, 2010 (the "Scheduling Order").  Two aspects of the Magistrate Judge's Scheduling Order are significant for purposes of this discussion.  First, the Scheduling Order recognized that it was Plaintiff's contention that Plaintiffs were the prevailing party as a matter of law based on Defendants' acceptance of responsibility to conform the property to ADA requirements in the consent decree.  Second, the Pretrial Order contains a provision that a party intending to file a motion for summary judgment must:

> [M]eet, in person or by telephone, [with opposing party] and confer to discuss the issues to be raised in the motion. ¶ The purpose of the meeting shall be to: (1)avoid filing motions for summary judgment where a question of fact exists; (2) determine whether the respondent agrees that the motion has merit in whole or in part; (3) discuss whether issues can be resolved without the necessity of briefing; (4) narrow the issues for review by the court ; (5) explore the possibility of settlement before the parties incur the expense of briefing a summary judgment motion; (6) arrive at a joint statement of undisputed facts.
>
> In the notice of motion, the moving party shall certify that the parties have met and conferred as ordered above or set forth a statement of good cause for the failure to meet and confer.

Doc. # 33 at11:20-12:9.  The court has examined the entirety of Plaintiff's motion for summary judgment, including the notice of motion, and cannot find any certification of compliance with the magistrate judge's order.

In examining the reasonableness of requested attorney's fees and costs, "[t]he district court should exclude from [its] fee calculation hours that were not 'reasonably expended.' [. . .

11

.] Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fees submission." Hensley, 461 U.S. at 434.

Plaintiff offers two arguments to counter Defendants' contention that the motion for summary judgment was unnecessary. First Plaintiffs argue that the motion for summary judgment was necessary to establish Defendants' liability. Second, Plaintiff contends that the motion was necessary to spur Defendants into a more receptive posture with respect to settlement. Two considerations bring Plaintiff's argument into question.

First, Plaintiff's concerns about Defendants' refusal to "admit liability" are dubious given that Plaintiff can easily demonstrate conclusively that she is the "prevailing party" as a matter of law for purposes of both attorney's fees and entitlement to statutory damages. In its order denying Plaintiff's motion for summary judgment, the court noted that Plaintiff was entitled to statutory damages as a matter of law. That argument discussion need not be repeated here. Pursuant to 42 U.S.C. § 12205, the prevailing party in an ADA action is entitled to reasonable attorney's fees. "The standard for making this threshold determination has been framed in various ways. A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' [Citation.]" Hensley v. Eckerhart, 461 U.S. 424, 432 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)).[3] In general, a plaintiff in a civil rights-related case prevails for purposes of award of attorney's fees if she "succeeds in obtaining an injunction under that Title." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968). This general standard has been applied to actions under the ADA. See, e.g., Karraker v. Rent-A-

---

[3] Although Hensley concerned the award of attorney's fees under 42 U.S.C. § 1988, the Court noted that the standards set forth in the opinion "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Hensley, 461 U.S. 432 n.7.

12

Center, Inc., 492 F.3d 896, 898-899 (7th Dist. 2007) (members of class action prevailed where they were awarded injunctive relief even though none of the class except the class representative received monetary damages).

Second, the Magistrate Judge's Scheduling Order provides that the moving party certify in their notice of motion for summary judgment that they have met and conferred with the opposing party. This provides both the opportunity and the obligation of the moving party to demonstrate the necessity of its motion. As the court noted, there is no certification in Plaintiff's moving papers that meet and confer did occur. There is a sharp difference of opinion between the parties whether the required "meet and confer" did, in fact, occur. Defendants infer that meet and confer did not take place. In their reply brief, Plaintiff contends that a "meet and confer" did take place on October 1, 2010. In support of their allegation that "meet and confer" did occur, Plaintiff submits a communication dated October 1, 2010, sent by Catherine Cabalo to Joe Cooper, attorney for Defendant Bliatout LLC which stated as follows, in pertinent part:

> This letter memorializes out telephone conversation today, during which you reiterated defendant Bliatout LLC's settlement offer of $35,000. After discussing out clients' respective positions and the costs of further litigating these issues, I communicated to you a counterdemand on behalf of Antonia Luna of $45,000. This amount includes damages for Ms. Luna and my office's attorneys' fees and costs. This offer will remain open until 5:00 p.m. on Monday, October 4, 2010, at which point all settlement offers will be rescinded and we will finalize our Motion for Summary Judgment.

Doc. # 65, Decl. of Catherine Cabalo, Exh. # 40.

The instant action is precisely the sort of action that the Magistrate Judge's order requiring meet and confer prior to the filing of a motion for summary judgment is intended to benefit. As the court noted in its order denying Plaintiff's motion for summary judgment, there was nothing in the motion that indicated its necessity. Plaintiff's argument that Defendants did not agree to accept "liability" until after the motion was filed misses the point. "Liability" and Plaintiff's and counsels' entitlements pursuant to that liability are, in this case easily determined as a matter of law. Pursuant to the Magistrate Judge's order, it was the duty

13

of Plaintiff's attorneys to meet and confer with Defendants with the specific intent in mind to, *inter alia*, determine whether the respondent agrees that the motion has merit in whole or in part, discuss whether issues can be resolved without the necessity of briefing, and narrow the issues for review by the court. Practically speaking, this means it was up to Plaintiff to confront Defendants with the legal basis for Plaintiff's claim that Plaintiff is entitled to statutory damages and attorney's fees and costs. Plaintiff's contention that Defendants were "liable" could easily and convincingly set forth in a two page letter rather than a 21-page motion for summary judgment. Unfortunately, so far as the available evidence indicates, the exchange that did occur consisted of nothing more than a simple exchange of offer and counter-offer. From the evidence available, it appears to the court that the sort of meaningful "meet and confer" contemplated by the Magistrate Judge's scheduling order did not occur.

Finally, the court notes briefly that Plaintiff's motion for summary judgment had no legal impact on the resolution of this action because it was denied without prejudice for technical reasons related to failure to follow local rules. "Reasonable costs" are those that are incurred in efforts that materially advance the action toward resolution. See Jadwin, 2011 WL 240695 at *56 (attorney not awarded fees for ineffective briefing not in conformity with court's order). The court finds that, in any event, the hours claimed for preparation of Plaintiff's motion for summary judgment would, if granted, result in an unjust award of fees.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir 1992). The court finds that, pursuant to the Magistrate Judge's Scheduling Order, an element of the proof required of Plaintiff to sustain the claim for hours billed for the summary judgment motion was both certification and evidence of the parties' efforts to resolve the issues outstanding through the meet and confer process. The court also finds that the necessary evidence is lacking and no other evidence indicating the necessity of Plaintiff's motion for summary judgement is apparent from

14

pleadings or from other evidence submitted by Plaintiff.  The court will therefore disallow the hours billed by Plaintiff for the preparation of their motion for summary judgment.

### B. Depositions of Bobby T. Vang and Hoa Trung Vo

Defendant contends that the depositions of Bobby T. Vang and Hoa Trung Vo were unnecessary inasmuch and they were intended only to establish liability, an issue that was not necessary to prove in light of the Consent Decree.  Plaintiff's motion for attorney's fees states that "[a]lthough Defendants agreed to the Consent Decree ordered by the Court on August 27, 2009, this Consent Decree did not contain any admissions of liability. [. . . .] In order to recover damages, plaintiff was required to prove liability through discovery." Doc. # 54 at 20:20-23.

As previously discussed, "liability," insofar as that term is intended to indicate an entitlement to damages and attorney's fees, was determinable as a matter of law as of the time the Consent Decree was entered into by Defendants.  While discovery is not burdened with the same meet-and-confer obligations that were imposed on Plaintiff's motion for summary judgment, Plaintiff does have the burden, in the face of Defendants' challenge to the necessity of the depositions, to show that the disputed depositions were not unnecessary.  Plaintiff's reply brief does not address Plaintiff's contentions regarding the depositions at all.  The only relevance that is asserted with regard to the depositions is found in Plaintiff's moving papers asserting that the depositions were necessary to establish Defendants' liability.

If Plaintiff had a purpose in taking the depositions of Bobby Vang and Hoa Trung Vo beyond the establishment of "liability," then Plaintiff was required to point to some evidence of that purpose when challenged by Defendants.  Since Plaintiff did not meet that challenge, the fees that are attributable to the depositions of Bobby Vang and Hoa Trung Vo are not reasonable and will not be compensated.

### C. Apportionment

Defendant Bliatout contends that certain of Plaintiff's attorney's fees are attributable to

co-Defendant Vo and should be apportioned accordingly.  In particular Defendant Bliatout contends that the fees that are attributable to Defendant Vo's allegedly abusive behavior and to the second site inspection should be taxed to Vo and not to Bliatout.  As Plaintiff correctly points out, the "allocation of responsibility between the landlord and a tenant by lease is effective only '[a]s between the parties.' 28 C.F.R. § 36.201(b). Thus, contractual allocation of responsibility has no effect on the rights of third parties." Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000).  Nothing prevents Bliatout from seeking contribution or indemnification from Vo, however such claims are not properly a consideration in the context of Plaintiff's action.  See id.  Any claim that Bliatout may have against Vo for contribution or indemnification must be addressed in a separate action or cross-claim.

### D.  Miscellaneous Fees and Expenses

Defendants object to certain fees and costs in the amount of $181.50 attributed to paralegal Aaron Clefton on the ground that the items billed were secretarial and not properly charged as paralegal work.  Defendants also object to fees in the amount of $2,428.44 attributable to a fourth site visit by Plaintiff's expert Barry Atwood on the ground there was no apparent reason for the expert's fourth visit.  Plaintiff contends that the fees billed by Aaron Clifton represent reasonable costs for activities within the scope of a paralegal.  Plaintiff alleges that the fourth visit by Aaron Clifton was crucial to the support of Plaintiff's position during settlement conference at the August 27, 2009, settlement conference.

The court concludes that Defendant has failed to demonstrate that the fees were unnecessary.  The fees for Aaron Clefton and Barry Atwood will be allowed to the extent not otherwise excluded by this order.

### E.  Fees on Motion for Attorney's Fees

There is no dispute that the prevailing party in an ADA case is entitled to reasonable attorney's fees including a reasonable fee for the time expended in the attorney's fees application.  See Serrano, 32 Cal.3d at 631 ("the time expended by attorneys in obtaining a

reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award"). Defendants' contentions regarding "fees on fees" are somewhat vague. While Defendants are generally critical of the verbosity of Plaintiff's motion for attorney's fees and the time expended on it, Plaintiff's central contention appears to be that attorney's fees pertaining to preparation of the motion for attorney's fees should be either reduced by the proportion of attorney's fees actually awarded to attorney's fees requested and/or reduced by a factor of ten percent.

      In Thompson v. Gomez, 45 F.3d 1365 (9th Cir. 1995) the Ninth Circuit Court of Appeals held that an approach that resulted in a reduction of the prevailing party's request for "fees on fees" by the same percentage as the court reduced "fees on merits" was compatible with the Supreme Court's decision in Hensley and was not an abuse of the district court's discretion. See id. at 1368 (percentage of the total award for merits fees is an arithmetic formulation reflecting the extent to which plaintiff is fees motion is successful and is an appropriate consideration in setting fees on fees).  "Fees for fee litigation are excludable, not only when the applicant has had 'extremely limited success on merits fees,' as plaintiffs argue, but in all cases '*to the extent* the applicant ultimately fails to prevail in such litigation.' [Citation]." Id. (quoting Comissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n.10 (1990) (italics added in Thompson)).

      Plaintiff agrees to a 10% reduction in "fees on fees." Defendants, somewhat confusingly, cite Overbo v. Loews California Theaters, a case from the Northern District, submitted by Plaintiff at Exhibit # 16 of Paul Rein, Doc. # 55 in support of Plaintiff's request for attorney's fees. In Overbo, the district court, noting sloppy and duplicative billing practice on the part of the Law Offices of Paul Rein, ordered a global 10% reduction in attorney's fees for services on the merits and applied the same percentage reduction to the amount requested for fees on fees. The court mentions this case in order to avoid any confusion as to the proper approach for the determination of "fees on fees." Although the approach used by the court in

Overbo is not incompatible with the approach set forth in Thompson, there may be some tendency to believe that the 10% reduction figure was an amount more or less randomly chosen to compensate for the inherent inefficiency in managing case work.  To the extent it might be Plaintiff's contention that a court may impose a 10% "haircut" in leu of the approach set forth in Thompson, there is no basis for such contention.  The request of Plaintiff's attorneys for "fees on fees" will be reduced pursuant to Thompson in proportion to the amount the fees on merits was reduced; that is, by a factor of 0.36.

In the instant case, Plaintiff will be awarded $78, 149 for attorney's fees exclusive of the fees associated with the preparation of the motion for attorney's fees.  The amount requested was $121,912.  The reduction of the amount awarded from the amount requested is 36%.  The total amount requested by Plaintiff's attorneys for preparation of the motion for attorney's fees was $16,849.  A reduction of 36% from that amount would result in an allowable fee of $10,783.

### CONCLUSION AND ORDER

Plaintiff's request for attorney's fees is hereby GRANTED with the following modifications:

1.  The court finds reasonable hourly rates for the requesting attorneys are as follows:

    | | |
    |---|---|
    | Paul Rein | $375 per hour |
    | Celia McGuinness | $315 per hour |
    | Catherine Cabalo | $295 per hour |

    The reasonable hourly rates for the requesting paralegals are as follows:

    | | |
    |---|---|
    | Aaron Clefton, Sr. | $165 per hour |
    | Katherine Castro | $100 per hour |

2.  The court finds the hours claimed by Plaintiffs for the preparation of the motion for summary judgment were not reasonable.  No hours will be allowed for time spent in preparation for that motion.  The total number of hours claimed by each legal staff member shall be REDUCED as follows:

    Paul Rein                              (  8.7 hours)

```
        Celia McGuinness          (  0.5 hours)
        Catherine Cabalo          ( 13.2 hours)
        Aaron Clefton             (  2.0 hours)
```

3. The court finds the hours claimed by Plaintiffs for the depositions of Hoa Trung Vo and Bobby T. Vang, or preparation therefore, were not reasonable. No hours will be allowed for time spent for the preparation or conduct of those depositions. The total number of hours claimed by each legal staff member shall be REDUCED as follows:

```
        Paul Rein                 (  3.4 hours)
        Celia McGuinness          ( N.A.)
        Catherine Cabalo          ( 39.4 hours)
```

4. The hours and compensation awarded to each of Plaintiff's legal personnel EXCLUDING time charged to the preparation of the motion for attorney's fees are:

| Attorney/Staff Member | Allowed Hours | Adjusted Rate | Total |
|---|---|---|---|
| Mr. Paul Rein | 120.2 hours | $375/hr. | $45,075 |
| Ms. Celia McGuinness | 45.4 hours | $315/hr | $14,310 |
| Ms. Catherine Cabalo | 52.6 hours | $295/hr | $15,517 |
| Mr. Aaron Clifton | 16.1 hours | $165/hr | $ 2,657 |
| Ms. Katherine Castro | 5.9 hours | $100/hr | $   590 |
| TOTALS: | 240.2 hours | | $78,149 |

5. Plaintiff's attorney's are awarded $10,783 for fees incurred for the preparation of the instant motion for attorney's fees.

6. Litigation fees and expenses payable by Defendants to Plaintiff total $19, 284.

7. Total Fees and Expenses payable by Defendants to Plaintiff are:

```
        Total Attorney's Fee on Merits:         $78,149
        Total Attorney's Fees on Fees:          $10,783
        Total Litigation Expenses and Costs:    $19,284
                TOTAL                          $108,216
```

/ / /

/ / /

/ / /

19

8. It is hereby ORDERED that Defendants shall, jointly and severally, pay to Plaintiff the sum of $108,216.00. Such payment is to be made within thirty (30) days of the date of service of this order.

IT IS SO ORDERED.

Dated:     May 25, 2011                                    _____
                                                                                    CHIEF UNITED STATES DISTRICT JUDGE